UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X

UNITED STATES OF AMERICA                :

        v.                              :      16 Cr. 384 (VB)

JOHN SIMONLACAJ,                        :

    Defendant.                          :

----------------------------------------X

# SENTENCING MEMORANDUM OF THE UNITED STATES

| | |
|---|---|
| JEFFREY D. MARTINO, Chief | MARY ANNE F. CARNIVAL |
| STEPHEN J. McCAHEY, Assistant Chief | HELEN CHRISTODOULOU |
| New York Office | MILOSZ GUDZOWSKI |
| Antitrust Division | Trial Attorneys, New York Office |
| U.S. Department of Justice | Antitrust Division |
| | U.S Department of Justice |

# Table of Contents

I. Background .................................................................................................................. 1

II. Related Cases ............................................................................................................. 2

III. Simonlacaj's Conduct................................................................................................. 2

    (a) Background ........................................................................................................ 2

    (b) The 2010 Tax Return......................................................................................... 3

IV. Calculation of the Sentencing Guidelines Range ...................................................... 4

V. There Is No Basis for a Departure.............................................................................. 4

    (a) Simonlacaj's family circumstances are not extraordinary ................................. 5

    (b) Simonlacaj's charitable works are an insufficient basis for a departure ........... 6

    (c) Simonlacaj has not shown that a custodial sentence will cause serious disruption to his employer's or his parent's business ........................................ 6

VI. The §3553(a) Factors Strongly Support a Sentence within the Advisory Guidelines Range and, as such, a Variance Not Warranted ........................................................ 7

    (a) Nature and Circumstances of Simonlacaj's Offense.......................................... 8

    (b) The Need to Afford Adequate Deterrence ......................................................... 8

    (c) A Custodial Sentence Is Not Needed to Avoid Unwarranted Sentencing Disparities Among Defendants Found Guilty of Similar Conduct ................... 10

    (d) The Appropriate Sentence for Simonlacaj ...................................................... 12

VII. Restitution................................................................................................................ 12

VIII. Conclusion ............................................................................................................... 13

# Table of Authorities

**Cases**

*Gall v. United States*, 552 U.S. 38, 54 (2007) .................................................................. 10

*Nelson v. United States*, 555 U.S. 350, 352 (2009) .......................................................... 10

*Peugh v. United States*, 133 S. Ct. 2072, 2084 (2013) ..................................................... 10

*States v. Rattoballi*, 452 F.3d 127, 133 (2d Cir. 2006) ...................................................... 5

*United States v. Cadet*, 664 F.3d 27 (2d Cir. 2011) ......................................................... 12

*United States v. Coppola*, 671 F3d 220, 254 (2d Cir. 2012) ............................................ 11

*United States v. Faria*, 161 F.3d 761, 763 (2d Cir. 1998) .................................................. 5

*United States v. Floyd*, No. 10 CR-309 (S.D.N.Y. Apr. 2, 2013) ..................................... 11

*United States v. Libous*, No. 14-CR 448 (S.D.N.Y. May 18, 2015 ..................................... 9

*United States v. Milikowsky*, 65 F3d 4 (2d Cir. 1995) .................................................... 6, 7

*United States v. Olenicoff*, No. 07-CR-227 (C.D. Cal. Apr. 16, 2008) ............................. 12

*United States v. Rita*, 551 U.S. 338, 349 (2007) .............................................................. 10

*United States v. Shokler*, 2013 WL 4851695 (E.D.N.Y. Sept. 10, 2013) ......................... 11

*United States v. Sprei*, 145 F.3d 528, 534 (2d Cir. 1998) .................................................. 5

*United States v. Stephen Sheridan*, 16 CR 237 (CS) .................................................... 2, 11

*United States v. Toback*, 2005 WL 992004 (S.D.N.Y. April 14, 2005) ............................. 7

*United States v. Walker*, 191 F.3d 326, 338 (2d Cir. 1999) ............................................... 5

*United States v. Warner*, 792 F.3d 847, 857 (7th Cir. 1015) ............................................. 6

**Statutes**

18 U.S.C. § 1349 .................................................................................................................. 2

18 U.S.C. § 3553(a) ............................................................................................. 7, 8, 10, 12

26 U.S.C. § 7206(1) ............................................................................................................. 2

26 U.S.C. § 7206(2) ........................................................................................................ 1, 12

U.S.S.G. § 2T1.4(a)(1) ......................................................................................................... 4

U.S.S.G. § 3E1.1 .................................................................................................................. 4

U.S.S.G. § 5H1.6 .................................................................................................................. 5

U.S.S.G.§ 5E1.2(h)(1) .......................................................................................................... 1

The government respectfully submits this Sentencing Memorandum in connection with the sentencing of the defendant, John Simonlacaj ("Simonlacaj"), scheduled for September 16, 2016, at 9:30 A.M. For the reasons stated herein, the government recommends that the Court impose a sentence on Simonlacaj within the United States Sentencing Guidelines ("Guidelines") for an offense level of 13, which is 12 to 18 months' imprisonment and a fine of $3,000 to $30,000.[1] In addition, the government respectfully requests that the Court order Simonlacaj to pay restitution to the Internal Revenue Service ("IRS") for the tax loss resulting from expenses that were inflated in the amount of $403,577. However, with respect to restitution, as counsel has indicated that Simonlacaj has filed an amended 2010 Individual Income Tax Form 1040, as discussed in Restitution, Section VII., below. The government respectfully requests that the Court defer its final determination of the amount of restitution owed by Simonlacaj to a date no later than ninety days after September 16, 2016, so as to allow the IRS time to process his amended 2010 tax return.

## I. Background

In connection with an investigation of fraud and other related crimes at the New York Power Authority's ("NYPA") administrative offices in White Plains, New York, on June 3, 2016, Simonlacaj pleaded guilty to a one-count Information charging him with violating 26 U.S.C. § 7206(2), aiding and assisting in the preparation and presentation of a false tax return. He entered his guilty plea pursuant to a Plea Agreement ("Agreement") with the Antitrust Division of the United States Department of Justice. Simonlacaj is not cooperating in the government's ongoing investigation.

---

[1] Pursuant to U.S.S.G. § 5E1.2(h)(1), since the offense was committed prior to November 1, 2014, the 2014 Guidelines are used to calculate the fine range.

1

## II. Related Cases

On June 8, 2015, Thomas Delaney pleaded guilty (*United States v. Thomas Delaney*, 15 CR 344 (CS)) to a two-count information charging him with conspiracy to defraud NYPA in violation of 18 U.S.C. § 1349, and false subscription, in violation of 26 U.S.C. § 7206(1). Sentencing before Judge Seibel is scheduled for December 8, 2016. Peter Shine pleaded guilty on December 2, 2015 (*United States v. Peter Shine*, 15 CR 826 (CS)) to a one-count information charging him with violating 26 U.S.C. § 7206(1) for subscribing to a false tax return. Sentencing is scheduled for December 16, 2016 before Judge Seibel. Stephen Sheridan ("Sheridan") pleaded guilty on March 25, 2016 (*United States v. Stephen Sheridan*, 16 CR 237 (CS)). He pleaded guilty to a two-count Information charging him with violating 18 U.S.C. § 1349 for conspiring to defraud NYPA, and 26 U.S.C. § 7206(1) for subscribing to a false tax return. Judge Seibel sentenced Sheridan on September 9, 2016 to three years' supervised release, 300 hours of community service, and ordered him to pay a fine of $500,000 (the statutory maximum). Restitution will be ordered at a later date.

## III. Simonlacaj's Conduct

**(a) Background**

Simonlacaj is 46 years old, married, and resides in Scarsdale, New York. He has a bachelor's degree in business from Iona College. Since 2005, Simonlacaj has been employed by HFZ Capital Group (HFZ"), a Manhattan real estate developer, and is currently a managing director and the head of development. Simonlacaj Presentence Report ("PSR") ¶¶ 39, 47-49.

In December 2005, Individual-1, Simonlacaj's sister, began conducting business under the name of Cortlandt Painting Co. ("Cortlandt Painting") to do small painting jobs, more

specifically, to paint wall murals. Individual-1 was the sole owner and she ran Cortlandt Painting out of her home in the Bronx.

**(b) The 2010 Tax Return**

This charge arises out of a 2010 tax return filed on behalf of Individual-1 on or about April 14, 2011. Simonlacaj used his sister's company to obtain a contract at NYPA. NYPA awarded a 2010 façade restoration contract of approximately $550,000 to Cortlandt Paint Co., DBA Cortlandt Painting & Restoration (hereinafter "Cortlandt") (identified in the Information as Company-1). Pursuant to that contract, Cortlandt provided window repair and washing services to NYPA. Because Cortlandt was Individual-1's business, the income and expenses resulting from Cortlandt's work at NYPA were recorded on her 2010 Individual Income Tax Form 1040 on a Schedule C.

Simonlacaj was responsible for Individual-1's underreporting of income that Cortlandt received from NYPA on Individual-1's 2010 tax return. In 2010, Simonlacaj exercised control over Cortlandt. He oversaw Cortlandt's performance of the work at NYPA and he also engaged an accountant who did Individual-1's taxes. In addition, Simonlacaj caused the information to be provided to the accountant which the accountant required to complete Individual-1's Form 1040, including the Schedule C. Cortlandt's expenses were inflated by Simonlacaj as follows:

| | |
|---|---|
| Cost of Goods Sold | $301,558 |
| Contract Labor | $60,170 |
| Supply Expenses | $10,000 |
| Wages to Employees | $31,849 |
| Total: | $403,577 |

These inflated expenses created a tax loss to the IRS of approximately $132,000.

### IV. Calculation of the Sentencing Guidelines Range

The government and Simonlacaj agree that there is no *ex post facto* issue under *United States Sentencing Commission Guidelines Manual* (Nov. 2015), the version in effect at the time of sentencing, and it should apply here. Plea Agreement ¶ 7; s*ee also* PSR ¶ 16 (the 2015 Guidelines Manual was used to determine the defendant's offense level).

In the Plea Agreement, the government and Simonlacaj stipulated and agreed that the adjusted Guidelines offense level for the crime committed by Simonlacaj is 13, which is calculated as follows:

> (a) Pursuant to U.S.S.G. § 2T1.4(a)(1), the offense level for the aiding and assisting in the preparation of a false and fraudulent income tax return offense charged in the Information is 16 (pursuant to U.S.S.G. §2T4.1(F) (tax table) tax loss of more than $100,000 but less than $250,000). Plea Agreement ¶ 8.
>
> (b) Pursuant to U.S.S.G. § 3E1.1(a) and (b), because the defendant pleaded guilty on June 3, 2016, and clearly demonstrated acceptance of responsibility through his allocution and subsequent conduct prior to the imposition of sentence, a 3-level reduction will be warranted. Plea Agreement ¶ 9.

The Probation Department has similarly calculated the appropriate offense level for Simonlacaj is level 13. PSR ¶ 27.

### V. There Is No Basis for a Departure

Defendant seeks a non-custodial sentence here on the basis of his family circumstances, charitable works, and also on an attenuated *Milikowsky* basis.[2] Each of defendant's arguments

---

[2] However, counsel has stated that they did not believe that the Court needs to consider a downward departure under Chapter 5, Part K to impose a sentence of probation. Sentencing Memorandum of John Simonlacaj, p. 15, FN. 7.

4

are unavailing, however, and the government requests that the Court impose a Guidelines custodial sentence.

### (a) Simonlacaj's family circumstances are not extraordinary

The defendant is seeking a downward departure claiming that a custodial sentence would be disastrous emotionally and financially to his children ages 18, 13, and 5 and his wife. Under the Guidelines, however, "[f]amily ties and responsibilities ... are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. § 5H1.6. As the Second Circuit has made clear, "[d]isruption of [a] defendant's life, and the concomitant difficulties for those who depend on the defendant, are inherent in the punishment of incarceration." *United States v. Sprei*, 145 F.3d 528, 534 (2d Cir. 1998). Accordingly, unlike Simonlacaj's circumstances, departures based upon family circumstances are "reserved for situations that are truly extraordinary." *United States v. Walker*, 191 F.3d 326, 338 (2d Cir. 1999); *see also United States v. Rattoballi*, 452 F.3d 127, 133 (2d Cir. 2006) ("[A] non-Guidelines sentence that rests primarily upon factors that are not unique or personal to a particular defendant, but instead reflects attributes common to all defendants should therefore be viewed as inherently suspect."); *United States v. Faria*, 161 F.3d 761, 763 (2d Cir. 1998) (rejecting a downward departure on the basis of financial and emotional consequences to three minor children and ex-wife; consequences were no greater than those faced by most criminal defendants who have a family).

Simonlacaj's family circumstances do not rise to the level of extraordinary. First, should he receive a Guidelines sentence as recommended by the government, defendant has significant assets and it does not appear that the family will be unable to weather the loss of defendant's income during the course of his incarceration. Furthermore, defendant's wife is capable of

5

caring for the children in defendant's absence. Given the foregoing, Simonlacaj's family circumstances do not justify a departure.

**(b) Simonlacaj's charitable works are an insufficient basis for a departure**

In support of a sentence of probation, Simonlacaj also points to his charitable works, including helping to build a church when he was 17 and, later on, as a young man working at a management firm in New York City, finding employment for over fifty newly arrived immigrants.

However commendable Simonlacaj's service to the community may be, it would not justify a downward departure here. *Cf. United States v. Warner*, 792 F.3d 847, 857 (7th Cir. 1015) (good works must be sufficient to justify the variant sentence; district court found Warner's charitable works to be "overwhelming – indeed, unprecedented"). In *Warner*, the defendant's good works went back many years. Among his good works were his donation of plush toys valued at $70 million to the Children's Hunger Fund over a 13-year period; a donation of $20 million in profits to the Princess Diana memorial fund; a donation of $2 million in profits to fund cancer research; and a $6.3 million donation to a charter school. *Warner*, 792 F.3d at 853. By contrast, Simonlacaj's service to the community, while admirable, is hardly overwhelming.

**(c) Simonlacaj has not shown that a custodial sentence will cause serious disruption to his employer's or his parent's business**

Finally, Simonlacaj's suggestion that *United States v. Milikowsky*, 65 F3d 4 (2d Cir. 1995) is supportive of a departure is wholly unavailing. Simonlacaj's contention that a custodial sentence would cause serious disruption to his employer's and his parents' business is not consistent with *Milikowsky*. In *Milikowsy*, the Second Circuit found the record to be undisputed and allowed the district court to conclude that the defendant to be the "only individual" with the

6

knowledge and skill to run one of the businesses of which he was a principal and that the defendant's daily involvement was needed to ensure the continuing viability of another of his businesses. *Id.* at 13. There were also 150 to 200 employees at those companies who would have lost their jobs had the companies gone bankrupt. *Id.* Defendant provides little support for his *Milikowsky* claim here. He simply claims that his incarceration would be disruptive to his employer's business and to his parents' property management business; he makes no showing, as *Milikowsky* requires, that his imprisonment would impose "extraordinary hardship on [his employer or his parents]. *Id.* at 9. The "hardship" he claims is both unsupported and limited, unlike *Milikowsky*, where hundreds of employees could have lost their livelihoods. Defendant's reliance on *United States v. Toback*, 2005 WL 992004 (S.D.N.Y. April 14, 2005) is similarly unavailing. Toback was the sole owner and operator of a business that employed upward of 80 people. The business demanded his daily personal involvement to secure its continued success and job security for its many employees. *Id.* at *5.

In sum, there is no basis for a departure on the basis of the foregoing grounds. Simonlacaj's circumstances simply do not support it.

## VI. The §3553(a) Factors Strongly Support a Sentence within the Advisory Guidelines Range and, as such, a Variance Not Warranted

For the reasons set forth below, each of the relevant § 3553(a) factors support a sentence for Simonlacaj within the Guidelines range for offense level 13, *i.e*, 12 to 18 months imprisonment, and the fine range of $3,000 to $30,000. Contrary to the defendant's arguments, §3553 factors, do not support a sentence of probation.

### (a) Nature and Circumstances of Simonlacaj's Offense

The characteristics of the offense here support a Guidelines sentence. Simonlacaj was the architect of the scheme here as described above in section III. Without Simonlacaj, this crime would not have occurred. There is no reason to believe that Individual-1 would have used Cortlandt to submit a bid to NYPA or that she would have falsified her tax return if she had. In December 2005, Individual-1 intended to conduct business under the name Cortlandt Painting to do small creative painting jobs, *i.e.*, to paint wall murals. However, in 2010, Simonlacaj began exercising control over Cortlandt and used the company to submit a bid to NYPA which awarded a $550,000 window repair and window washing job to the company. Simonlacaj oversaw Cortlandt's performance of the work at NYPA and he also engaged his accountant at that time to do Individual-1's taxes. Simonlacaj was responsible for Individual-1's underreporting of income that Cortlandt received from NYPA on Individual-1's 2010 tax return. Simonlacaj provided the information that was required to complete Individual-1's Form 1040, including the Schedule C detailing Cortlandt's revenues and expenses (which were inflated) to the accountant. He did not provide the information directly to the accountant, but, rather, he gave the information to an individual working with him who, in turn, provided it to the accountant. Finally, Simonlacaj gained personally from this scheme. Cortlandt paid over $65,000 to a company in which Simonlacaj was the owner and its sole employee.

### (b) The Need to Afford Adequate Deterrence

One of the most important factors that this Court must consider in imposing a sentence under §3553(a) is the need for the sentence to "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). A Guidelines sentence would support the message that filing false

tax returns is a crime with a deservedly serious punishment. To discourage this fraud against the IRS, the Court needs to send a strong message of deterrence.

First, as this Court recognized, tax crimes are serious crimes. In *United States v. Libous*, No. 14-CR 448 (S.D.N.Y. May 18, 2015), a recent case before this Court where the defendant was convicted of filing false tax returns over a three-year period resulting in a tax loss of $38,000 and was sentenced to six months' imprisonment, Your Honor stated that "everybody has to pay taxes and the nation's tax system depends on those taxes, and the nation's defense, the nation's infrastructure, everything that we do depends on taxpayers accurately reporting their income and taxes." *See* Tr. May 18, 2015, (attached hereto as Exhibit A) at 54-57. Although Simonlacaj is not charged with filing his own false return, as an aider and abettor, he was the direct cause of Individual-1 doing so. In 2010, Simonlacaj controlled Cortlandt. Simonlacaj engaged the accountant, inflated Cortlandt's expenses and was responsible for providing the false information upon which the accountant relied to prepare Individual-1's complete Individual-1's Form 1040, including the Schedule C. Finally, the tax loss here is significant – nearly $100,000 above the tax loss in *Libous*.

Second, Your Honor was unequivocal in stating that there was no question in the Court's mind that "jail sentences in tax cases deter similarly situated people from cheating on their taxes. This is probably an area in which general deterrence is the most relevant. Of all the different types of federal crimes, this might be most pertinent and relevant in the area of tax crimes. The knowledge that you will go to jail certainly makes people think that tax fraud is just not worth it." *Id.* at 56. A guidelines sentence is necessary to ensure that there is adequate deterrence for tax crimes.

9

### (c) A Custodial Sentence Is Not Needed to Avoid Unwarranted Sentencing Disparities Among Defendants Found Guilty of Similar Conduct

A sentencing court may not "presume that a sentence within the applicable Guidelines range is reasonable," but must consider the §3553 (a) factors. *Nelson v. United States*, 555 U.S. 350, 352 (2009). The Guidelines nonetheless remain "the lodestone of sentencing" and the post-*Booker* sentencing regime sensibly "steer[s] district courts to more within-Guidelines sentences." *Peugh v. United States*, 133 S. Ct. 2072, 2084 (2013). That is because "[t]he post-Booker federal sentencing scheme aims to achieve uniformity by ensuring that sentencing decisions are anchored by the Guidelines and that they remain a meaningful benchmark through the process of appellate review." *Id.* at 2083.

The imposition of a sentence within the advisory Guidelines range best serves "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. §3553 (a)(6). In creating the Guidelines, "Congress sought uniformity in sentencing by narrowing the wide disparity in sentences imposed by different federal courts for similar conduct." *United States v. Rita*, 551 U.S. 338, 349 (2007) (internal quotation marks omitted). Even after *Booker*, "uniformity remains an important goal of sentencing." *Kimbough v. United States*, 552 U.S. 85, 107 (2007). The Guidelines "help to avoid excessive sentencing disparities," *Id.* (internal quotation marks omitted), because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges," *Gall v. United States*, 552 U.S. 38, 54 (2007), and because most defendants are sentenced within the Guideline ranges. *See Peugh*, 133 S. Ct. at 2084.

A custodial sentence here would not create an unwarranted sentencing disparity. First, there are no co-defendants involved and thus no need to avoid disparate sentences among co-defendants[3]. *Cf, United States v. Floyd*, No. 10 CR-309 (S.D.N.Y. Apr. 2, 2013) (defendant sentenced to three years probation with six months' home confinement with monitoring for tax conspiracy, offense level 15 and range of imprisonment of 18 to 24' months, where co-defendant had been sentenced to a term of probation). Most importantly, "even if § 3553(a)(6) were a lawful basis for leniency here, ... it is only one of several factors that must be weighed and balanced." *United States v. Coppola*, 671 F3d 220, 254 (2d Cir. 2012) (citation omitted).

Moreover, there is no evidence on the basis of the cases cited by Simonlacaj to conclude that a noncustodial sentence would avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. Although the defendant cites a number of cases in this regard, they do not take into account significant factual differences that resulted in the lower sentences.

For example, defendant argues that *United States v. Shokler*, 2013 WL 4851695 (E.D.N.Y. Sept. 10, 2013), supports his position that probation is warranted because Shokler pleaded guilty to a six-count indictment, including aiding in the filing of false corporate returns, resulting in a tax loss of over $592,000 and was sentenced to two years of probation. However, the Court found that Shokler's payment of the substantial restitution ($592,704.50) would likely impact his financial situation most of his working life. *Id*. at *2. The Court found it better for defendant to continue to pay restitution and to support his family. Id at *3. There was no fine imposed in *Shokler* based on the Court's finding that the defendant did not have any assets and that it was unlikely that he would have any in the near future. Simonlacaj, however, has

---

[3] In *Sheridan* cited above in Section II., Related Cases, the defendant's tax loss was $52,853 plus any applicable penalties and interest, and unlike Simonlacaj, Sheridan underreported the income on his own tax return. See *Sheridan* 516 Cr. 237, Sentencing Memorandum of the United States, p. 5.

11

significant assets and as of February 2016 earns $450,000 per year, plus bonuses. The imposition of a fine and restitution are not likely to impact his life in any significant way. A custodial sentence, however, would make that impact.

In *United States v. Olenicoff*, No. 07-CR-227 (C.D. Cal. Apr. 16, 2008), the sentencing level was 4 (because there was no tax loss for criminal sentencing purposes). Sentencing Tr., p. 9. Unlike *Olenicoff*, however, there is a significant tax loss here - $132,000 - resulting in an offense level of 13. Moreover, the government in *Olenicoff* recommended a sentence of probation. The government is not, however, recommending probation for Simonlacaj.

### (d) The Appropriate Sentence for Simonlacaj

Based on the foregoing, the government respectfully requests that Your Honor sentence Simonlacaj to a term of imprisonment within the Guidelines range of Level 13 and impose a fine within the Guidelines range of $3,000 to $30,000 in order to reflect the seriousness of Simonlacaj's offense, promote respect for the law, provide just and fair punishment, and deter others from committing similar frauds.

### VII. Restitution

In fashioning a sentence, the Court must consider the need to provide restitution to the victims. 18 U.S.C. §3553(a)(7). The government notes that restitution may be ordered in a tax case such as Simonlacaj's. *See, e.g., United States v. Cadet*, 664 F.3d 27 (2d Cir. 2011) (restitution in the amount of $104,243 where defendant was convicted of 16 counts of aiding and assisting in the preparation of false federal tax returns in violation of 26 U.S.C. §7206(2)).

The IRS, the victim here, suffered a tax loss of $132,000 based on Simonlacaj's having inflated Cortlandt's expenses by $403,577 and those expenses being reflected on Individual-1's Schedule C. As of the filing of this Sentencing Memorandum, Individual-1 has not filed an

amended 2010 Individual Tax Form 1040. However, Simonlacaj has stated in his sentencing submission that he has filed his own amended Individual Income Tax Form 1040 with a Schedule C reflecting Cortlandt's income and correct expenses. In addition to filing an amended 2010 tax return, Simonlacaj also made a total payment to the IRS of $212,255 which his accountant calculated as follows: $147,850 in additional tax payments, $27,442 in interest and $36,963 in late payment penalties. As this return has not yet been processed by the IRS, the government cannot be certain that the IRS will be made whole by such payment. *See* Sentencing Memorandum of John Simonlacaj at p. 13.

The government therefore respectfully asks the Court to defer entering an order of restitution for a period of 90 days to allow the IRS to process Simonlacaj's 2010 amended return. If, at the conclusion of its processing of defendant's 2010 amended tax return, the IRS has indeed been made whole by the payment already made by Simonlacaj, the government will so notify the Court that a restitution order is not necessary. Conversely, if Simonlacaj's payment of $212,255 does not result in the IRS being been fully compensated for its loss, the government will ask the Court for a restitution order in the precise amount of the shortfall.

## VIII. Conclusion

In light of the nature and severity of Simonlacaj's crime, the policy statements promulgated by the Sentencing Commission, and the need to promote general deterrence, the government respectfully recommends that the Court sentence Simonlacaj within the Guidelines range for offense level 13, that is, 12 to 18 months' imprisonment and a fine of between $3,000

and $30,000. The government also recommends that the Court defer the imposition of an order of restitution for 90 days for the reasons as set forth above in Section VII.

                                              Respectfully submitted,

                                              JEFFREY D. MARTINO, Chief
                                              STEPHEN J. McCAHEY, Assistant Chief
                                              New York Office
                                              Antitrust Division
                                              U.S. Department of Justice

By: _/s/ Mary Anne F. Carnival_
                                              MARY ANNE F. CARNIVAL
                                              HELEN CHRISTODOULOU
                                              MILOSZ GUDZOWSKI
                                              Trial Attorneys, New York Office
                                              Tel.: (212) 335-8033